OVERSEER OF THE POOR OF NORWICH v. HALSEY J. YARRINGTON.

When a person, acting as justice of the peace, holds a commission for that office from the Governor, under the seal of the state, the court will not go behind that commission, to inquire whether he had been duly appointed to that office by the General Assembly of the State, or not.

The statute of November 1, 1843, which authorises the overseer of the poor of a town to commence a prosecution for bastardy in his own name, when the woman neglects, for the space of thirty days after her delivery, to charge any one with being the father of the child, does not apply to a case, where the woman has in fact, previous to her delivery, commenced a prosecution in her own name against the father of the child, and such proceedings were therein had, that the defendant was ordered to enter into a recognizance for his appearance at the county court, even though no subsequent proceedings were had therein, by reason of a discharge being executed by the mother to the defendant, upon a settlement between them.

If the town have any remedy, in such case, it is by disregarding the settlement, and prosecuting the suit in the name of the woman.
60

Overseer of the Poor of Norwich *v.* Yarrington.

This was a complaint, founded upon the statute of November 1, 1843, authorizing the overseer of the poor of a town to commence a prosecution for bastardy in his own name, when the woman neglects, for the space of thirty days after her delivery, to charge any one with being the father of the child. From the records produced it appeared, that Rufus M. Benson, overseer of the poor of the town of Norwich, on the eighth day of January, 1845, preferred his complaint to Thomas J. Nevins, one of the justices of the peace for the county of Windsor, alleging that Sarah E. Waterman had been delivered of a bastard child about the first of October, 1844, and that she had neglected and refused, for the space of thirty days after its birth, to charge any one with being the father of such child;—that Nevins thereupon issued his warrant, and caused the mother of the child to be brought before him, and she then testified, that she had been delivered, September 19, 1844, of a bastard child, of which the defendant was the father;—that thereupon the said Benson, as overseer of the poor, preferred a complaint to the said Nevins, as justice of the peace, alleging that Sarah E. Waterman had been delivered of a bastard child, of which the defendant was the father, and praying for process against him, &c.;—that thereupon the said Nevins issued his warrant, and caused the defendant to be brought before him, and, upon hearing, ordered him to recognize, with sureties, in the sum of $300, for his appearance before the county court.

When the case was entered in the county court, the defendant filed a motion to dismiss, for the alleged reason, that Thomas J. Nevins was not, at the time the proceedings were had before him, a justice of the peace for the county of Windsor. Subsequently, the defendant pleaded, that he was not guilty, and gave notice of special matter of defence. And at the May Term, 1847, the case came on for trial,—Redfield, J. presiding.

The defendant, first, in support of his motion to dismiss, gave in evidence a certificate from the secretary of state, duly authenticated, reciting a list of the justices of the peace in Norwich, where said Nevins resided, appointed for the year commencing December 1, 1844,—which did not contain the name of Thomas J. Nevins,—and certifying that no person of that name was appointed a justice in that town for that year. The plaintiff then gave in evidence a commission from the Governor of the State, under the seal of the State,

to Thomas J. Nevins, as a justice of the peace for the county of Windsor for the year commencing December 1, 1844, and proved that Nevins officiated, during that year, as a justice of the peace for said county. The court thereupon overruled the motion.

On the trial by jury, the plaintiff called Sarah E. Waterman as a witness,—who testified, that she was delivered of a bastard child, September 19, 1844, of which the defendant was the father,—and then rested his case. The defendant then offered to prove, in pursuance of his special notice of defence, that on the second day of August, 1844, the said Sarah E. Waterman made her complaint in writing, on oath, in due form of law, to Ira Davis, a justice of the peace for the county of Windsor, charging the defendant with being the father of the child, with which she was then pregnant, and which, unless prevented by a previous marriage, would be born a bastard, and praying process against the defendant, &c.; that thereupon the said justice issued his warrant, and caused the defendant to be brought before him, and ordered him to enter into a recognizance, with surety, in the sum of three hundred dollars, conditioned that he appear before the county court, then next to be held at Woodstock, within and for the county of Windsor, and abide such order, as the court should make in the premises; that thereupon the defendant did enter into such recognizance; and that afterwards, on the first day of November, 1844, and more than thirty days after the birth of said child, the defendant, for good and valuable consideration, settled the said prosecution, and the subject matter thereof, and the same was by the said Sarah E. Waterman fully discharged. To this evidence the plaintiff objected, and it was excluded by the court.

Verdict for plaintiff. Exceptions by defendant.

*O. P. Chandler* and *Washburn & Marsh* for defendant.

1. The evidence offered was improperly excluded; because it tended to show, that the mother of the bastard child had not neglected, or refused, to charge any one with being the father of such child, within the provision of the statute of November 1, 1843, and that therefore this proceeding, in the name of the overseer of the poor, is unauthorized and illegal. Acts of 1843, p. 19. Rev. St. 351, sec. 14,—repealed by Stat. of 1843, sec. 5.

2. The testimony offered tended to show, that a prosecution had been previously commenced by the woman, in her own name, pursuant to the provisions of the Revised Statutes, and that the same had been discharged by her,—which discharge is authorized by law, and is a bar to this proceeding. Rev. St. 348–350, §§ 1, 2, 12, 13.

3. The court erred in overruling the motion to dismiss.

*Tracy & Converse* for plaintiff.

1. It will not probably be denied, but that the contingency has happened, which would authorize the action of the overseer of the poor, unless barred by the prévious proceedings by the mother. That the alleged settlement with the mother could not foreclose the rights of the town seems to us very apparent. If such should be the law, it would be in the power of the mother and the reputed father, in every case of bastardy, to cheat the town of their security for the support of the child. The statute of 1843 was enacted, to provide against such an event.

2. Nevins was a justice of the peace *de facto;* and that is sufficient for the purposes of this case. *Adams* v. *Jackson*, 2 Aik. 145. *McGregor* v. *Balch*, 14 Vt. 428. *Cummings* v. *Clark et al.*, 15 Vt. 650. But if it were admissible to go into the matter of the justices appointment, we insist, that the commission, under the seal of the state, is conclusive evidence.

The opinion of the court was delivered by

Davis, J. The county court correctly overruled the motion to dismiss the suit, made in behalf of the defendant on the ground assumed, that T. J. Nevins, the acting magistrate, to whom the complaint was made, and who ordered the defendant to recognize for his appearance at the county court, was not in fact in commission at the time. We cannot go behind the commission, in due form, executed by the executive authority of the state, conferring the office of justice of the peace upon Nevins for that year, and inquire whether he was duly appointed by the two houses of the General Assembly in joint convention, or not.

The complaint, in this case, was filed by Rufus M. Benson, overseer of the poor, on the 8th day of January, 1845, stating that Sarah

E. Waterman of Norwich, a single woman, was delivered of a bastard child on or about the first of October preceding, which child had become chargeable to said town, and averring that she had neglected and refused, for more than thirty days after the birth of the child, to charge any person with being the father thereof, in pursuance of the provisions of the first section of chapter 67 of the Revised Statutes. A warrant having issued against her, she was apprehended and brought before the magistrate, and examined on oath, and her testimony duly reduced to writing, and properly certified. Then follows a complaint against the defendant, embodying the material facts so sworn to, in nearly the usual form in which such complaints are made by the woman, which complaint, like the one against the woman, is signed officially by said Benson. A warrant for the arrest of the defendant follows, and the usual proceedings necessary to transfer the case into the county court for trial.

By the 12th section of chapter 67 of the Revised Statutes overseers of the poor of any town, already charged or likely to become charged with the support of a bastard child, were authorized, whenever in their opinion the interests of the town required such a proceeding, to commence a prosecution against the putative father of such child, *in the name of the mother*, or to control any prosecution, previously commenced by her, and prosecute the same to final judgment; such overseer first filing with the magistrate, or with the county clerk, as the case might be, a certificate of his intention, and a promise to indemnify the mother against all future costs. By the statute of November 1, 1843, power is first given to such overseers to commence such prosecution *in their own name;* and that power is only given, in case the mother shall neglect or refuse, for a period of thirty days after the birth of the child, to charge any person with being the father of such child. As the mother, in such case, is supposed to decline making a complaint, provision is made for laying a proper foundation for the prosecution, by first making a complaint against the woman ; whereupon the justice, to whom it is made, is required to issue a warrant for her apprehension, and, on her being brought before him, she is to be examined on oath, and her testimony to be taken down in writing. This being done, the magistrate is then empowered to issue his warrant against the person implicated, and, on his being arrested and brought before him,

to proceed in the same manner, as if the woman had voluntarily signed a complaint.

The proceedings in the present case were in conformity to this statute, the original complaint averring, as it was necessary it should, the fact of the lapse of more than thirty days after the birth of the child, without any person being charged by the mother, as the father thereof. Without that pre-requisite, no authority whatever existed for the proceeding in this form. On trial in the county court, upon proper plea and notice, the defendant proposed to dis-- prove that indispensable fact, by shewing affirmatively, that previously to the birth of the child, the mother made, in writing, and on oath, the usual complaint to a magistrate, charging the defendant with being the father of the child, with which she was pregnant,— that a warrant was issued, by virtue of which he was arrested,—that he was required to recognize, and did recognize, in the usual way, for his appearance at the then next term of the county court, to answer to the complaint,—and that before the intervention of that court, he compromised the matter with the prosecutor, to her satis- faction, and received from her a full discharge. The county court excluded this evidence, as incompetent to constitute a defence. This was clearly an error.

It was suggested in argument, that the phrase " to charge any person with being the father," as used in the first section of the statute of 1843, must be understood in a different sense, from the same language used in the first section of the general statute; that in the former case it should not be held to exclude the particular mode of proceeding adopted here, unless a prosecution were not merely commenced by the woman, but unless the same were carried forward to a final determination, fixing the paternity, and establish-- ing the order of support. There is no ground for such a construction. If there were any ambiguity in the language of the latter statute, it seems to be removed by the express reference made to the previous statute, in which the manner of making the charge is distinctly pointed out. The obvious purpose of the new provision, which was to authorize the institution of a prosecution in the name of the over- seer, in the event of no one being instituted by the woman within a certain time, as well as the brief period of time limited, leads us inevitably to the same conclusion.

In this view of the subject, we have no occasion to inquire into the validity of the settlement made between the woman and the defendant, as against the overseers of Norwich. If it be conceded, as I apprehend it should be, that the fifth section of the statute of 1843, which is substituted for the equivocal fourteenth section of the general statute, would render inoperative the discharge executed by the woman, so that the overseer, if he had filed the requisite certificate with the clerk, might, notwithstanding such discharge, have taken the control of the prosecution and pursued it to a final determination, still the existence of this right has no effect whatever upon the question now in controversy. The authority to commence or control prosecutions in the name of the woman is not at all impaired by the statute of 1843. It still remains, as before, except so far as it is modified by the new provision in respect to the power of the woman to interfere, and must not be confounded with the superadded right, in a certain event, to proceed in a new and different form, given by the recent statute.

The result is, the judgment of the county court is reversed and a new trial directed.